**E-FILED on** 3/17/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RICHARD QUIGLEY,

Plaintiff,

v.

CITY OF WATSONVILLE; WATSONVILLE POLICE DEPARTMENT; LEE KATICH; AND DOES 1-10,

Defendants.

No. C-05-03763 RMW

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**[Re Docket No. 4, 9, 10]**

Richard Quigley ("Quigley") has sued the City of Watsonville, the Watsonville Police Department,[1] and Lee Katich ("Katich") (collectively "defendants") under 42 U.S.C. § 1983 for constitutional violations. Defendants move to dismiss Quigley's claims. Quigley opposes the motion. The court has read the moving and responding papers and considered counsels' arguments. For the reasons set forth below, the court grants defendants' motion.

## I. BACKGROUND

Quigley alleges that, on June 11, 2004, he left the Watsonville courthouse on his motorcycle. Complaint ("Comp.") ¶ 8. Katich, a Watsonville police officer, stopped Quigley and cited him for

[1] At the outset, the court dismisses the claims against the Watsonville Police Department. "Police departments are not suable entities under [s]ection 1983. The proper defendant is the municipality." *James v. City of Long Beach*, 18 F. Supp. 2d 1078, 1081 (C.D. Cal. 1998). Quigley apparently agreed to dismiss his claims against the Watsonville Police Department but has not yet done so.

violating California's helmet law, Cal. Veh. Code § 27803.  Comp. ¶ 8.  Quigley claims that Katich "was aware that [he] would be leaving the courthouse and was lying in wait for [him]." *Id*. at ¶ 9.  After Quigley accepted the ticket, Katich ordered him not to drive away without wearing his helmet. *Id*. at ¶ 10.  Quigley informed Katich "that he did not believe that this was a lawful order." *Id*.  Shortly thereafter, a police sergeant arrived at the scene.  *Id*. at ¶ 11.  The sergeant agreed with Katich "that he had issued a lawful order."  *Id*.  Quigley disagreed and drove away on his motorcycle.  *Id*. at ¶ 12.  Katich, the sergeant, and another Watsonville police officer gave chase and pulled Quigley over in a legal parking space at a McDonald's restaurant.  *Id*.  Katich then unlawfully arrested Quigley for violating Cal. Veh. Code § 2800(a), "willful failure or refusal to comply with a lawful order of a peace officer[,] which is a misdemeanor offense."  Comp. ¶ 13.  The police took Quigley to the Watsonville Police Department, where they handcuffed him to a bench for two hours. *Id*. at ¶ 14.  This delay enabled defendants unlawfully to tow and impound Quigley's motorcycle, even though it was legally parked on private property.  *Id*. at ¶ 15.  Defendants did so to punish Quigley and failed to ask the property owners whether they objected to the motorcycle's presence. *Id*. at ¶ 16.  The criminal trial court eventually dismissed the section 2800(a) charge against Quigley. *Id*. at ¶ 18.  Quigley claims that Katich violated the Fourth and Fourteenth Amendments to the United States Constitution by arresting him and impounding his motorcycle.  *Id*. at ¶¶ 20-31.[2] Quigley also contends that the city and the police department unconstitutionally failed to train and supervise officers and maintained unlawful customs and policies.  *Id*. at ¶¶ 26-31.[3]

---

[2]     It appears that Quigley does not allege stand-alone Fourteenth Amendment claim: his causes of action are styled "False Arrest" and "Unlawful Seizure."  Quigley thus appears to reference the Fourteenth Amendment merely because it makes the Fourth Amendment's guarantees applicable to the States.  *See, e.g., Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1052  (C.D. Cal. 2005) ("Fourth Amendment rights and liberty interests [are] protected by the Due Process Clause of the Fourteenth Amendment").

[3]     In his opposition brief, Quigley disclaimed any excessive force claim stemming from being handcuffed to a bench at the station.  *See* Opp. Mot. Dism. at 7:22 ("Plaintiff does not oppose the dismissal of his claim for excessive force.").   However, at oral argument, Quigley stated that he had found additional authority that suggests that he has a viable cause of action.  Because the court grants Quigley leave to amend, he may pursue this theory.

## II.  ANALYSIS

### A.  Motion to Dismiss

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept the facts alleged in the complaint as true. *Id*.  "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.  Section 1983 and Qualified Immunity

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)).[4]  To prevail on his section 1983 claim, Quigley "must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  The doctrine of qualified immunity shields defendants in section 1983 actions from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The United States Supreme Court has instructed district courts to "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998).  If the answer is no, "the inquiry ends." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003).  However, if the plaintiff does allege a viable constitutional claim, the second question is 'whether the right was clearly established.'" *Squaw Valley*, 375 F.3d at 943 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A right is "clearly established" when "it would be clear

---

[4]  Section 1983 states that "every person who, under color of any statute, ordinance, regulation, custom, or usage" subjects another "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

**1. Arrest**

**a. Constitutional Violation**

Quigley claims that Katich unlawfully arrested him for refusing to wear a motorcycle helmet. Comp. ¶ 13. The parties agree that California law mandates that motorcycle riders wear helmets. *See* Cal. Veh. Code § 27803(b) ("[i]t is unlawful to operate a motorcycle . . . if the driver or any passenger is not wearing a safety helmet"). Quigley does not argue that he was wearing a helmet. Instead, Quigley asserts that Katich lacked the power to arrest him for so minor a transgression. According to Quigley, the motorcycle helmet law is a "correctable offense" under California Vehicle Code section 40303.5: otherwise known as a "fix it ticket." Quigley contends that the police cannot lawfully arrest someone for a correctable offense.

This argument lacks merit. First, even assuming that Quigley is correct that an officer cannot arrest a citizen for violating the motorcycle helmet law, Quigley did more than just violate that law. His own allegations show that he failed to obey Katich's order not to ride away without a helmet. *See* Comp. ¶¶ 10, 12 (asserting that Katich ordered Quigley "not to leave the scene on his motorcycle without wearing a helmet," after which Quigley "climbed on his motorcycle and left the scene"). Katich therefore properly invoked California Vehicle Code section 2800(a), which makes it "unlawful to willfully fail or refuse to comply with any lawful order . . . of any peace officer." Violating section 2800(a) is a misdemeanor. *See* Cal. Veh. Code § 40000.7(a)(2) ("[a] violation of any of the following provisions is a misdemeanor, and not an infraction: . . . [s]ection 2800, relating to failure to obey an officer's lawful order"). An officer who witnesses a misdemeanor may arrest the offender without first obtaining a warrant. *See* Cal. Pen. Code § 836(a)(1) ("[a] peace officer may arrest a person . . . without a warrant" if he "has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence"). Likewise, the United States Supreme Court has held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2002)

(warrantless arrest for misdemeanor failure to follow Texas seatbelt law not unconstitutional).[5] Because Katich had probable cause to believe that Quigley violated both the motorcycle helmet law and section 2800(a), Quigley does not allege that Katich's conduct was unlawful.[6]

Second, contrary to Quigley's argument, the "fix it ticket" statute contains an exception for conduct similar to his. The statute provides that "the arresting officer shall permit the arrested person to execute a notice containing a promise to correct the violation." Cal. Veh. Code § 40303.5. However, this rule does not apply when "the arresting officer finds that any of the disqualifying conditions specified in subdivision (b) of Section 40610" exist. *Id*. California Vehicle Code 40610(b)(3) provides that one such "disqualifying condition" is that "[t]he violator does not agree to, or cannot, promptly correct the violation." Under those circumstances, "the officer may take other appropriate enforcement action." Cal. Veh. Code § 40610(c). Here, as noted, Quigley alleges that he did not "agree to . . . correct the violation." Contrary to Quigley's contention, California Vehicle Code sections 40303.5, 40610(b)(3), and 40610(c) empowered Katich to take suitable steps to remedy the situation, including placing Quigley under arrest. Because Quigley fails to allege a

---

[5] Quigley cites *In re Williamson*, 43 Cal.2d 651, 654 (1954) for the proposition that section 2800(a) cannot apply because the motorcycle helmet law is a "specific statute" that proscribes particular punishments and "controls over the general" provisions of section 2800(a). Opp. Mot. Dism. at 4:18-24. In *Williamson*, an inmate conspired to contract without a license in violation of California Business and Professions Code section 7028. Another provision of the Business and Professions Code made violating section 7028 a misdemeanor. However, the inmate was convicted under California Penal Code section 182, which authorized a harsher penalty for conspiracies in general. The court held that section 7028 "deals with the specific crime of conspiring to violate certain licensing provisions" and was "a specific enactment" that trumped section 182. *Williamson*, 43 Cal.2d at 654. *Williamson* merely applies the venerable rule that a later-enacted statute that *conflicts* with a general statute governs. Here, there is no conflict. Section 2800(a) — not the motorcycle helmet law — applies to Katich's response to Quigley's failure to heed his order.

[6] The facts that the criminal trial court granted Quigley's demurrer is not dispositive. Quigley does not argue that this court should give that order collateral estoppel effect. In any event, because the criminal trial court decided the issue as a matter of law, it does not appear that it adjudicated the issue of whether Katich had probable cause to arrest Quigley. *Cf. DeGennaro v. Town of Riverhead*, 836 F.Supp. 109, 111-12 (E.D. N.Y. 1993) (declining to give trial court's dismissal of charges collateral estoppel effect on issue of probable cause in subsequent section 1983 case because "the Southampton Town Court dismissed the charges against Mr. DeGennaro based on the pleadings before it").

constitutional violation stemming from his arrest, the court grants defendants' motion to dismiss this aspect of his claims.[7]

**2. Towing**

**a. Constitutional Violation**

Quigley also claims that defendants towed his motorcycle from a legal parking space in a McDonald's lot. Comp. ¶¶ 12, 15. "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). However, one such exception is the police's community caretaking function. "[This] doctrine allow[s] law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism." *U.S. v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005). For example, in *Hallstrom v. Garden City*, 991 F.2d 1473 (9th Cir. 1993), a factually-similar case, the police arrested a woman for failing to provide her driver's license or proof of insurance. After the arrest, they towed her car from a private parking lot. The Ninth Circuit held that the search was lawful under the community caretaking function because towing the car protected it from vandalism and theft. *Id*. at 1478 n.4. Similarly, in *Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229 (N. D. Cal. 2005), the police pulled a driver over for a seatbelt violation. When he refused to sign a "promise to appear" citation, they arrested him and towed his car. The court held that the community caretaking function justified the impoundment, noting that the driver's "vehicle could have been left unattended for a long time." *Id*. at 1233. The court reasoned that California Vehicle Code section 22651(h)(1) permits officers to tow a vehicle if they "arrest[ ] any person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take . . . the person into custody." *Hupp*, 389 F. Supp. 2d at 1233.[8] In addition, the court rejected the plaintiff's argument

---

[7] Quigley's allegation that Katich was "lying in wait" for him, comp. ¶ 9, is irrelevant. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2002) ("Our cases make clear that an arresting officer's state of mind . . . is irrelevant to the existence of probable cause.").

[8] At oral argument, Quigley contended that California Vehicle Code section 22653(c) requires officers to obtain the consent of a property owner before towing a vehicle — a circumstance that allegedly was not present here. However, that provision states that the police "*may*, at the request of the property owner or person in lawful possession of any private property, remove a

that the community caretaking doctrine did not apply because police towed his car "to teach him a lesson." *Id.* at 1233 n.7.

Just as in *Hallstrom* and *Hupp*, where police lawfully towed vehicles following arrests for minor offenses, this court finds that the police here properly invoked the community caretaking function to impound Quigley's motorcycle from the McDonald's parking lot. As in *Hallstrom*, towing the vehicle from a private parking lot prevented it from being vandalized or stolen. As in *Hupp*, the fact that Quigley contends that the towing was retaliatory is not relevant. *Compare* Comp. ¶ 16 ("defendants, in order to punish plaintiff, called the towing company to have the motorcycle towed and impounded") *with Hupp*, 389 F. Supp. 2d at 1233 n.7 ("Officer Rebello's statement that he would teach plaintiff a lesson by having his truck impounded does not alter this analysis").

Quigley relies on *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005). That case involved a husband — who had a driver's license — teaching his unlicensed wife to drive in their neighborhood. The police spotted the wife driving irregularly and cited her for driving without a license. Although the husband and wife had parked in their own driveway, the police impounded their car. The husband and wife sued under section 1983. The Ninth Circuit held that the community caretaking doctrine did not apply because there was no evidence that it was unsafe or unwise to leave the vehicle in its present location:

> In their community caretaking function, police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic. Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft . . . . An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location.

*Id*. at 864-65 (internal citations and quotation marks omitted).

---

vehicle from private property . . . when an officer arrests any person driving or in control of a vehicle for an alleged offense." *Id.* Contrary to Quigley's contention, section 22653(c) merely authorizes the police to honor a property owner's request to tow a vehicle, and does not condition impoundment upon any such request.

However, *Miranda* is distinguishable. For one, it did not involve an arrest. Thus, unlike the situation here, the officers in *Miranda* did not act pursuant to California Vehicle Code section 22651(h)(1), which permits officers to impound a vehicle after taking the driver into custody. Moreover, the towing in *Miranda* was especially egregious because (1) the vehicle was parked in the plaintiffs' own driveway and (2) the husband, a licensed driver, could have lawfully operated the car. *See Miranda*, 429 F.3d at 865-66 ("[T]he vehicle was already parked in the Mirandas' home driveway. Mr. Miranda was licensed to drive the car. Under these circumstances, the Mirandas' car was not creating any impediment to traffic or threatening public safety."). Here, on the other hand, the police had arrested Quigley, his motorcycle was on private property, there was no indication when he was going to be able to retrieve it, and noone else was present at the scene to drive it away. Accordingly, because the impoundment was reasonable under the community caretaking function, Quigley fails to allege a constitutional violation. The court grants defendants' motion to dismiss.

**III. ORDER**

For the foregoing reasons, the court grants defendants' motion to dismiss. The court gives Quigley twenty days leave to amend.

DATED: 3/14/06

/s/ Ronald M. Whyte
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

Kate Wells            lioness@got.net

**Counsel for Defendant(s):**

Rebecca Connolly      Rebecca.Connolly@grunskylaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**        3/17/06                              SPT
                                          **Chambers of Judge Whyte**

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —C-05-03763 RMW
DOH                                              9